IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION

NO. 5:14-CT-3287-FL

| | | |
|---|---|---|
| JOHN FRANK MILLER, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | ORDER |
| | ) | |
| MS. WILLIAMSON, MS. LYNCH, MR. MEADOWS, MR. MOBLEY, and MR. FEMPERSON, | ) ) ) | |
| | ) | |
| Defendants. | ) | |

The matter comes before the court on defendants' motion for summary judgment (DE 64). The issues raised have been fully briefed and are ripe for adjudication. For the following reasons, the court grants defendants' motion.

**STATEMENT OF THE CASE**

For ease of reference the statement of the case as set forth in the court's May 13, 2016, order is as follows:

> On November 20, 2014, plaintiff, a state inmate incarcerated at Warren Correctional Institution ("Warren"), filed this action *pro se* pursuant to 42 U.S.C. § 1983. Plaintiff alleged that defendants Ms. Williamson ("Williamson"), Ms. Lynch ("Lynch"), Mr. Meadows ("Meadows"), and Mr. Mobley ("Mobley") discriminated against him on the basis of his mental health status in violation of the Equal Protection Clause of the Fourteenth Amendment to the United States Constitution. Plaintiff also alleged his rights pursuant to the Due Process Clause were violated in connection with his grievance proceeding and his attempts to obtain employment with the Janitorial Production Plant ("JPP"). Plaintiff then filed a motion to appoint counsel, which the court denied.

> On December 11, 2014, plaintiff filed a motion to amend his complaint to provide an address for defendant Lynch and to add as a defendant an individual he identified as Mr. Fesperman. Plaintiff then filed a motion to have North Carolina Prisoner Legal Services provide him assistance with litigating this action, which the court construed as a second motion to appoint counsel. Plaintiff also filed a motion for a temporary restraining order and a second motion to amend his complaint. In his second motion to amend, plaintiff clarified that the defendant he previously identified as Mr. Fesperman was actually Mr. Femperson.
>
> On May 11, 2015, the court granted plaintiff's motions to amend and directed the clerk of court to add Mr. Femperson as a defendant in this action. The court also allowed plaintiff to proceed with this action, but denied his motions to appoint counsel and for injunctive relief. On June 16, 2015, plaintiff filed a motion requesting a transfer to another facility, which the court denied.
>
> On September 11, 2015, defendants filed a motion to dismiss pursuant to Rule 12(b)(6) arguing that plaintiff failed to state a claim upon which relief may be granted. The motion was fully briefed.

(See (DE 37)).

On May 13, 2016, the court entered an order granting in part and denying in part defendants' motion to dismiss. The court denied defendants' motion as to plaintiff's equal protection claim, but granted the motion as to plaintiff's remaining claims. In June and July of 2016, plaintiff submitted several letters to which plaintiff attached administrative remedy documentation, inmate requests, and a blank JPP application. On August 18, 2016, plaintiff filed a motion to compel defendants to provide him a list of mental health level three inmates employed at the North Carolina Department of Public Safety ("DPS") from July 2014, through the date plaintiff filed the motion. The court granted plaintiff's motion and directed defendants to provide plaintiff with the requested materials. In the interim, plaintiff filed a motion to appoint counsel, which the court denied.

On September 27, 2016, plaintiff filed a motion requesting a copy of his mental health records from January 2012, through the date he filed the motion. On September 30, 2016,

2

defendants filed a motion for an extension of time to comply with the court's August 18, 2016, discovery order. The court granted defendants' motion, and defendants filed the pertinent discovery materials on October 21, 2016. Then, on October 27, 2016, the court entered an order directing defendants to respond to plaintiff's September 27, 2016, motion requesting a copy of his mental health records. Defendants provided plaintiff with the requested copy of plaintiff's mental health records on November 9, 2016. Because defendants provided plaintiff a copy of his mental health records, the court thereafter denied as moot plaintiff's September 27, 2016, motion.

On December 20, 2016, defendants filed a motion for summary judgment arguing that plaintiff is unable to establish a constitutional violation. Alternatively, defendants assert the affirmative defense of qualified immunity. As part of their motion, defendants filed a Statement of No Material Facts and an Appendix which included the following: affidavits from defendants Williamson and Lynch; an affidavit from nonparty Charles Meadows ("Meadows"), a Correctional Programs Supervisor at Warren Correctional Institution ("Warren"); plaintiff's inmate activity history; excerpts from plaintiff's case management notes; plaintiff's March 16, 2015 Janitorial Products Plant ("JPP") application; the JPP waiting list; and a grievance. Plaintiff responded to defendants' motion and attached an inmate request to staff dated July 3, 2014. Defendants replied, and attached a supplemental affidavit from defendant Williamson. Plaintiff then filed a sur-reply and attached a grievance response.

**STATEMENT OF FACTS**

Plaintiff's action involves his efforts to obtain a job in the JPP at Warren, where he was transferred on March 20, 2014. (Meadows Aff. ¶ 6). At that time, defendants Williamson and Lynch were Warren's Inmate Assignment Coordinators ("IAC"), and had the responsibility of assigning inmates to facility and enterprise jobs. (Id. ¶¶ 7, 8). On June 24, 2014, plaintiff was assigned a position as a clothes house operator. (Id. and Ex. A, p. 7). Plaintiff refused the position. (Id.)

On July 3, 2014, plaintiff submitted an inmate request form, which stated the following: "I talked to my programer Mr. [Richard Boisvert ("Boisvert")], about working in [JPP], the soap plant[,] he said that since I was a sex offender I couldn't work there, I have since talked to some inmates that are sex offenders who work there. If I can't[,] I think that would be discrimination, and I will [write] a grievance. Could you write me back and explain the qualifications to me." (Resp. Attach.). Defendant Williamson provided the following response: "your crime has nothing to do with working at JPP. They do not accept M.H 3."[1] (Id.) Defendant Williamson attests that, during that time period, JPP management had expressed an informal policy of not accepting mental health level three inmates for employment due to a 2008 incident involving a mental health level three inmate assaulting another inmate with a box cutter at a JPP plant. (Williamson Supp. Aff. ¶ 5). Williamson further attests that the JPP plant is an off-site location separate from the main Warren

---

[1] The court notes that defendant Williamson initially submitted an affidavit denying she told plaintiff that he could not work for the JPP due to his mental health status. (Williamson Aff. ¶ 4). However, after plaintiff presented evidence that Williamson had in fact told plaintiff that he could not be assigned to the JPP due to his mental health status, Williamson submitted a second affidavit stating that she did not recall making the statement to plaintiff due to the large volume of inmate JPP applications she screened. (Williamson Supp. Aff. ¶ 5). Williamson further recalled an informal JPP policy which is set forth in more detail above. (Id.)

4

prison and that the JPP facility does not have a nursing station or the ability to store medications which often are prescribed to mental health level three inmates. (Id.) Finally, during the relevant time period, there were no JPP vacancies, and all inmate JPP applications were forwarded to the JPP inmate coordinator who maintained a waiting list. (Id. ¶¶ 6-7; Lynch Aff. ¶ 5).

On August 2, 2014, plaintiff filed a grievance complaining that defendant Williamson told him that she would not hire plaintiff for the JPP because plaintiff was a mental health level three inmate. (Williamson Aff. Ex. A, p. 5). Prison officials investigated plaintiff's grievance, and obtained the following statement from Williamson: "All application are forwarded to Enterprise. [Plaintiff] was advised that Enterprise was not hiring at this time and that there is a waiting list of inmates waiting for a job at JPP. I never told [plaintiff] he would not be hired due to his mental health status." (Id.) On August 12, 2014, prison officials provided plaintiff a response to his grievance which echoed defendant Williamson's statement. (Id. p. 6). Prison officials, additionally, informed plaintiff that defendant Williamson "does not do the hiring for JPP, she keeps the list of names for the staff at JPP to review. Ultimately, they make the decision on who they hire if the inmate meets the criteria." (Id.) On August 20, 2014, plaintiff submitted an inmate request asking for a copy of the criteria for JPP employment. ((DE 44), Attach. 3). Defendant Williamson responded the following: "You need to submit an application. There is a waiting list." (Id.) At some point in August 2014, Meadows replaced defendants Williamson and Lynch as the IAC at Warren, and Meadows assumed the role of assigning inmates to facility and enterprise jobs. (Meadows Aff. ¶ 7).

On January 22, 2015, plaintiff asked Boisvert to be referred for employment with the JPP, and was provided the application form. (Id. ¶ 9 and Ex. B, p. 13). Plaintiff then submitted an

5

application for the JPP on March 14, 2015. (Id. Ex. C). Shortly thereafter, Boisvert informed plaintiff that plaintiff was on the waiting list for a job with the JPP. (Id. Ex. B, p. 14; Ex. D). Boisvert again informed plaintiff he was on the JPP waiting list on May 18, 2015, and July 24, 2015. (Id. Ex. B, pp. 15, 16). On December 22, 2015, plaintiff was assigned a job with the JPP, and currently remains assigned to the JPP. (Id. ¶ 12 and Ex. B, p. 20).

**DISCUSSION**

A.  Standard of Review

Summary judgment is appropriate when there exists no genuine issue of material fact, and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a); Anderson v. Liberty Lobby, 477 U.S. 242, 247 (1986). The party seeking summary judgment bears the burden of initially coming forward and demonstrating an absence of a genuine issue of material fact. Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). Once the moving party has met its burden, the nonmoving party then must affirmatively demonstrate that there exists a genuine issue of material fact requiring trial. Matsushita Elec. Industrial Co. Ltd. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986). There is no issue for trial unless there is sufficient evidence favoring the non-moving party for a jury to return a verdict for that party. Anderson, 477 U.S. at 250.

B.  Analysis

Defendants raise the affirmative defense of qualified immunity in this § 1983 action. Government officials are entitled to qualified immunity from civil damages so long as "their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982). In other words, a government official is entitled to qualified immunity when (1) the plaintiff has not demonstrated a

6

violation of a constitutional right, or (2) the court concludes that the right at issue was not clearly established at the time of the official's alleged misconduct. Pearson v. Callahan, 555 U.S. 223, 236 (2009). The court first determines whether plaintiff adequately alleged a constitutional violation.

The Equal Protection Clause of the Fourteenth Amendment provides that a state may not "deny to any person within its jurisdiction the equal protection of the laws." U.S. Const. Amend. XIV, § 1. To that end, the Equal Protection Clause provides that "all persons similarly situated should be treated alike." City of Cleburne v. Cleburne Living Ctr., 473 U.S. 432, 439 (1985). To establish an Equal Protection claim, a plaintiff "must first demonstrate that he has been treated differently from others with whom he is similarly situated and that the unequal treatment was the result of intentional or purposeful discrimination. If he makes this showing, the court proceeds to determine whether the disparity in treatment can be justified under the requisite level of scrutiny." Veney v. Wyche, 293 F.3d 726, 730–31 (4th Cir. 2002) (internal quotation omitted); Morrison v. Garraghty, 239 F.3d 648, 654 (4th Cir. 2001).

Where the alleged classification involves a "suspect class," the alleged classification is subject to strict scrutiny by a court. Massachusetts Bd. of Retirement v. Murgia, 427 U.S. 307, 312 (1976). Plaintiff, as a prisoner with a mental health level three status, is not a member of a suspect class. See Giarrantano v. Johnson, 521 F.3d 298, 303 (4th Cir. 2008) (stating that prisoners are not a suspect class); City of Cleburne v. Cleburne Living Center, 473 U.S. 432, 446 (1985) (stating that mental illness is not considered a suspect classification for the purposes of scrutiny under the Equal Protection Clause). Accordingly, the appropriate level of scrutiny is "whether the disparate

7

treatment is reasonably related to [any] legitimate penological interests." Veney, 293 F.3d at 732 (internal quotation omitted).

In this action, plaintiff has not demonstrated that he actually was treated differently from any similarly situated inmate seeking employment with the JPP. Rather, the record reflects that he was placed on the waiting list for a JPP position after he formally submitted an application on March 14, 2015, and then ultimately obtained a position with the JPP in January 2016. (Meadows Aff. ¶¶ 9-12 and Exs. B, C, and D). Even if plaintiff could establish that he was treated differently from others with whom he is similarly situated, he still cannot establish a *prima facie* case because there is no evidence that defendants acted with a discriminatory purpose. With respect to plaintiff's allegations against defendant Williamson, the record reflects that Williamson was not responsible for making JPP hiring decisions, and that she advised plaintiff to file an application because there was a waiting list. (Williamson Aff. Ex. A, p. 6; Williamson Supp. Aff. ¶ 4; (DE 44) Attach. 3). Based upon the foregoing, plaintiff failed to establish a *prima facie* equal protection claim.

Even if plaintiff could establish a *prima facie* equal protection claim, he still cannot establish a constitutional violation. As stated, an inmate's equal protection claim fails if defendants establish that the disparate treatment was reasonably related to any legitimate penological interests. Veney, 293 F.3d at 732 (internal quotation omitted). Defendant Williamson attested in her affidavit that the JPP informally expressed a general practice of not accepting mental health level three inmates for employment due to a 2008 incident in which a mental health level three inmate assaulted another inmate while in JPP employment. (Williamson Supp. Aff. ¶ 5). Defendant Williamson also stated that the practice was in effect because the JPP plant was located in an off-site location, which made it difficult to provide medical services or medication to mental health level three inmates. (Id.) The

8

Fourth Circuit has recognized that "prison safety and security are legitimate penological interests." Veney, 293 F.3d at 732; Morrison, 239 F.3d at 655; see also, Carter v. Michigan Dept. of Corr., No. 1:13-cv-37, 2013 WL 3270909, at * (W.D. Mich. June 27, 2013) ("Because prisoners who suffer from sexual disorders may be disruptive to the order and safety of the prison, the decision to deny employment to those prisoners is rationally related to a legitimate governmental purpose."). Based upon the foregoing, plaintiff fails to establish a Fourteenth Amendment violation, and defendants are entitled to qualified immunity for this claim.

## CONCLUSION

Based upon the foregoing, defendants' motion to dismiss (DE 64) is GRANTED. The clerk of court is DIRECTED to close this case.

SO ORDERED, this the 12th day of June, 2017.

LOUISE W. FLANAGAN
United States District Judge